IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ABDUR-RAHIM DIB DUDAR<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY INSURANCE COMPANY,<br><br>Defendant. | CIVIL ACTION FILE<br>NO. 1:20-cv-02438-WMR |

## **ORDER**

This matter is before the Court on the following motions brought by the parties: Plaintiff's Modified Motion for Discovery [Doc. 49]; Plaintiff's Motions to Remand and Alternatively Bar Testimony of Ken Simmons [Docs. 52, 54]; Defendant's Renewed Motion for Summary Judgment [Doc. 75]; and Plaintiff's Motion to Compel Discovery [Doc. 78]. Upon consideration of the parties' arguments on the respective motions, the applicable law, and all appropriate matters of record, this Court GRANTS Defendant's Renewed Motion for Summary Judgment [Doc. 75] and DENIES Plaintiff's motions [Docs. 49, 52, 54, and 78] for the reasons that follow.

## I. <u>FACTUAL BACKGROUND</u>

Plaintiff owns a rental property located at 1122 Elaine Drive in Forest Park, Georgia ("the Property") [Doc. 84 at 70:5–8], that was insured by Policy No. 91-EP-T045-8 ("Policy"), which was issued by Defendant [Doc. 75-2, ¶ 5]. In October 2018, Plaintiff submitted two insurance claims to Defendant relating to damages done to the property. [<u>Id.</u> at ¶¶ 13, 14]. Plaintiff told Defendant that he believed the damages resulted from an act of vandalism. [Doc. 84 at 184:22–185:1].

Defendant inspected the property and concluded that the damages were not due to vandalism. [<u>Id.</u>] Rather, Defendant determined that the damages were due to neglect, wear, tear, or breakdown, none of which were covered by the Policy. [Doc. 75-2 at ¶ 30 (stating that "the plumbing and electrical issues," which were the issues reported by Plaintiff in 2018, "were not caused by intentional acts but, rather, were a result of wear and tear and the Property's poor condition")]. These October 2018 damages later became the subject of an investigation conducted by the City of Forest Park's Planning, Building & Zoning Department ("Department") due to complaints made my Plaintiff's then-tenant. [Doc. 75-4 at ¶¶ 1–4].

Mr. Ken Fleming, one of the Department's Code Compliance Officers, conducted the investigation. [<u>Id.</u>] In his report, Mr. Fleming noted several "building code issues & exterior property issues." [<u>Id.</u> at ¶ 5]. Mr. Fleming concluded that these issues rendered the property unsafe and unsanitary. [<u>Id.</u> at ¶ 12]. And, on

2

October 19, 2018, Mr. Fleming posted a notice prohibiting occupancy until the Property was rendered safe and sanitary again. [Id.]  Mr. Fleming gave Plaintiff ten days to repair the issues. [Id. at ¶ 11].

On October 22, 2018, Plaintiff filed a dispossessory suit against his then-tenant in the Magistrate Court of Clayton County. [Doc. 84 at 167:1–4].  Plaintiff alleged that, due to his then-tenant's "Malicious Destruction of Premises and violation of ordinance and misuse," he was entitled to rent accruing up to the date of judgment or vacancy, as well as the "cost of damages to property." [Id. at 167:16–25].  Plaintiff's then-tenant counterclaimed for constructive conviction. [Id. at 173:14–25, 174:1–8].  However, on November 12, 2018, following a trial, the Magistrate Court dismissed both Plaintiff and Plaintiff's then-tenant's claims. [Doc. 84-1, at 19].  The court noted that "neither party presented sufficient evidence to prove their claim[s]." [Id.]

When he visited the property on November 20, 2018, Plaintiff discovered broken glass, spilled paint, graffiti, and the removal of certain electrical fixtures at the Property, all of which he blamed on his then-tenant. [Doc. 85, at 207:20–25, 208:1–7].  The next day, Plaintiff filed another insurance claim with Defendant claiming that these damages were due to vandalism. [Doc. 75-2, ¶ 15]. Defendant inspected the Property on November 28, 2018, and agreed with Plaintiff that some of the damages might been the result of recent vandalism. [Id. at ¶ 17]. Defendant

3

noted, however, that some of the damages were damages that had remained unrepaired from October 2018. [Id.] Therefore, Defendant prepared an estimate only for the damages that occurred in November 2018. [Id. at ¶ 18].

Defendant then issued two checks to Plaintiff for $7,545.02 and $748.88. [Id.] The first check was for structural repairs, and the second check was to replace his damaged appliances. [Id.] But, on December 20, 2018, Plaintiff returned both payments. [Id. at ¶ 22].

After receiving Plaintiff's rejection, Defendant re-inspected the Property on January 8, 2019. [Id. at ¶ 23]. The re-inspection confirmed the initial findings. [Id.] At the time of the second inspection, Plaintiff had not made any repairs to the property. [Doc. 84 at 184:6–9]. On January 10, 2019, Defendant slightly modified its estimate and re-issued a structural damage payment to Plaintiff totaling $8,306.53. [Id. at 232:8–15].

However, Plaintiff again rejected this payment as insufficient because it did not include payment for the October 2018 damages. [Id. at 232:8–233:24]. Although Defendant reiterated its reasoning for denying payment for the October 2018 damages, at Plaintiff's request Defendant conducted yet another inspection. [Doc. 75-2 at ¶ 30]. But, Defendant still concluded that the October 2018 damages were not due to vandalism and were not otherwise covered by the Policy. [Id.]

4

Plaintiff later called Defendant to dispute its conclusions, alleging that he possessed a police report that confirmed the electrical system damaged in October 2018 was due to vandalism. [Id. at ¶ 33]. Although Defendant requested a copy of this report, Plaintiff never responded. [Id.]  But, during this interaction, Plaintiff confirmed that as of July 5, 2019, no repairs had been performed and that the Property was continuing to deteriorate. [Id.]

## II. PROCEDURAL BACKGROUND

On October 14, 2019, Plaintiff filed his complaint in state court, asserting what appeared to be claims sounding in breach of contract against Defendant. [*See* Doc. 1-1 at 1-11]. Plaintiff subsequently amended his complaint in state court on January 27, 2020, asserting essentially the same claims. [*See* Doc. 1-1 at 395-406]. The case was removed to this Court based on diversity jurisdiction on June 8, 2020 [Doc. 1], and Plaintiff's amended complaint was re-filed in the record as the operative complaint. [Doc. 4].

Pursuant to this Court's scheduling order, the period for discovery expired on January 5, 2021. [*See* Doc. 13].  Thereafter, Defendant filed its initial motion for summary judgment [Doc. 26] and Plaintiff filed a motion to determine the sufficiency of Defendant's responses to discovery [Doc. 25], along with various other motions. [*See* Docs. 29-32, 38, and 42].  Following a hearing, the Court dismissed without prejudice both the Defendant's initial motion for summary

judgment and Plaintiff's motion to determine the sufficiency of the responses to discovery, and re-opened discovery for a period of ninety (90) days. [*See* Doc. 47]. The Court denied the various other motions filed by Plaintiff. [Id.]

On April 8, 2021, Plaintiff filed a Modified Motion for Discovery [Doc. 49] without complying with this Court's standing order, which requires the party to first attempt informally to resolve the discovery issue and then contact the Court before filing a formal motion regarding discovery. [*See* Doc. 8]. Additionally, Plaintiff filed two identical documents titled "Motion to Remand Based Upon 28 U.S. Code § 1447(c) and Alternatively Bar Testimony of Ken Simmons." [Docs. 52, 54]. After the extended discovery period expired, Defendant filed its Renewed Motion for Summary Judgment [Doc. 75]. Plaintiff then filed a Motion to Compel Discovery [Doc. 78], again without complying with this Court's standing order regarding the resolution of discovery disputes. The Court heard oral arguments on these motions on January 4, 2022, and it is these motions that that are now before the Court.

### III. LEGAL STANDARD

**A. Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper when the record evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R.

Civ. P. 56(a)).  An issue will be considered "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  On summary judgment, the Court will view the evidence, and any inferences that may be reasonably drawn, "in the light most favorable to the [nonmovant]." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

"The moving party bears the initial burden [of demonstrating] that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  If the moving party carries this burden, then "the burden shift[s] to the non-moving party to demonstrate that there is indeed a[ genuine issue of material] fact that precludes summary judgment." Id. Then, summary judgment is only appropriate if the non-moving party fails to meet its burden of presenting evidence sufficient to create a genuine issue of material fact as to an essential element of its claim. See Celotex, 477 U.S. at 323 (noting that summary judgment should be granted in favor of the moving party when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof").

### B. Applying State Substantive Law

In Georgia, "[t]he law is well settled that federal courts sitting in diversity cases must apply the forum state's conflict of law rules in order to resolve

substantive legal issues." Johnson v. Occidental Fire & Cas. Co. of N.C., 954 F.2d 1581, 1583 (11th Cir. 1992) (citing, *inter alia*, Gen. Tel. Co. of the Se. v. Trimm, 706 F.2d 1117 (11th Cir.1983)).  Georgia adheres to the *lex loci contractus* approach in contract cases, which means that "[contracts] are to be governed as to their nature, validity, and interpretation by the law of the place where they were made." Trimm, 252 Ga. at 95 (alteration in original) (quoting Tillman v. Gibson, 44 Ga. App. 440, 442–43 (1931)).  "[T]o determine where a contract was made, the court must determine where the last act essential to the completion of the contract was done." Id. (citing Peretzman v. Borochoff, 58 Ga. App. 838, 838 (1938)).  Georgia law provides that, in insurance cases, delivery is the last essential act; so "insurance contracts are considered made at the place where the contract is delivered." Johnson, 954 F.2d at 1584 (citing Iowa State Travelers Mut. Assn. v. Cadwell, 113 Ga.App. 128, 129 (1966)).  Therefore, Georgia state law applies to the contract claims in this case because the insurance policy was delivered to Plaintiff in Georgia.

### IV. DISCUSSION

#### A. Defendant's Renewed Motion for Summary Judgment[1]

Defendant is entitled to summary judgment for three reasons.  First, there is no evidence that the October damages were the result of vandalism or any other act

---

[1] The Court has read Plaintiff's First Amended Complaint as stating breach of contract claim(s) and demanding that punitive damages be assessed against Defendant.

8

that would be covered by the Policy. Second, even if evidence existed that would otherwise establish a genuine issue of material fact about whether the Policy covered the October damages, the doctrine of collateral estoppel bars Plaintiff from litigating this issue in this Court. Finally, although the November damages were covered under the Policy, Defendant met its contractual obligation under the Policy, so no breach occurred.

Plaintiff has not provided any evidence that suggests that the October damages were the result of vandalism or any other covered act. An insured claiming an insurance benefit "has the burden of proving that a claim falls within the coverage of the policy." Georgia Farm Bureau Mut. Ins. Co. v. Hall County, 262 Ga. App. 810, 812 (2003). A claim for damages may not be based upon "speculation, conjecture, or guess work." Harmon v. Allstate Prop. and Cas. Ins. Co., 488 Fed. Appx. 419, 420 (11th Cir. 2012) (citation omitted).

Plaintiff has only cited vandalism as the reason why he believes that the October 2018 damages were covered under the Policy. Plaintiff made the same assertion in the Magistrate Court of Clayton County, but the magistrate court found that Plaintiff did not "present[] sufficient evidence to prove [his] claim." [Doc. 84-1 at 19]. Plaintiff has not provided this Court with any additional evidence that the October 2018 damages were due to vandalism, nor has Plaintiff asserted that the October 2018 damages were otherwise covered under the Policy. Therefore, this

Court finds that the October 2018 damages were not covered under the Policy and, as such, Defendant did not breach the Policy by not paying Plaintiff for those damages.

Even if Plaintiff had evidence that showed that the October 2018 damages were due to vandalism or asserted that the October 2018 damages were otherwise covered under the Policy, the Court could not consider the evidence or assertions because the doctrine of collateral estoppel precludes Plaintiff from further litigating this issue. "Collateral estoppel, i.e., issue preclusion, refers to the effect of a judgment in foreclosing relitigation of an issue that has already been litigated and decided. In a diversity case, federal courts will give preclusive effect to a judgment of a state court provided that two conditions are met: first, that the courts of the states from which the judgment emerged would do so themselves; and second, that the litigants have had a full and fair opportunity to litigate their claims in a prior state proceeding satisfying the applicable requirements of due process." Wingard v. Emerald Venture Fla. LLC, 438 F.3d 1288, 1293 (11th Cir. 2006) (citation omitted) (citing Shields v. Bellsouth Advert. & Publ'g Co., 228 F.3d 1284, 1288 (11th Cir. 2000)). "A party seeking to assert collateral estoppel under Georgia law must demonstrate that (1) an identical issue, (2) between identical parties, (3) was actually litigated and (4) necessarily decided, (5) on the merits, (6) in a final judgment, (7) by a court of competent jurisdiction." Cmty. State Bank v. Strong, 651 F.3d 1241,

1264 (11th Cir. 2011) (citing Body of Christ Overcoming Church of God, Inc. v. Brinson, 287 Ga. 485, 486 (2010)).

As mentioned above, Plaintiff sued his then-current tenant in the magistrate court, in which Plaintiff alleged that the October 2018 damages were due to vandalism. [Doc. 84 at 167:16–25]. After conducting a trial on the issue, the magistrate court concluded that Plaintiff had not provided sufficient evidence to prove that the October 2018 damages were caused by his then-tenant. [Doc. 84-1 at 19]. Additionally, although Defendant itself was not literally a party to that litigation, Plaintiff and Defendant are in privity because, as Plaintiff's insurer, Defendant "stands in [Plaintiff's] shoes." Khan v. Landmark Am. Ins. Co., 326 Ga. App. 539, 542 (2014). The doctrine of collateral estoppel therefore bars Plaintiff from litigating this issue in this Court because Plaintiff litigated the same issue in state court, in a case that involved the same parties, and the issue was decided on the merits.

Although the November 2019 damages were covered under the policy, Plaintiff has not provided sufficient evidence to show that Defendant breached the Policy. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." SAWS at Seven Hills, LLC v. Forestar Realty, Inc., 342 Ga. App. 780, 784 (2017) (citing Dewrell Sacks, LLP v. Chi. Title Ins. Co., 324 Ga.

App. 219, 223 (2013)).  Plaintiff's only reason for rejecting Defendant's attempts to pay him for the November 2019 damages is that the payment did not include an amount for the October 2018 damages. [Doc. 84, at 218:24–219:5].  At no point does Plaintiff even argue that Defendant's conduct subsequent to the damage in November 2019 breached the Policy.  Therefore, because the Court has found that Defendant did not breach the Policy when it did not compensate Plaintiff for the October 2018 damages, Plaintiff has failed to produce evidence that would show that Defendant breached the Policy.

The Court finds that Defendant has met its initial burden to show that no genuine issues of material fact are left to be litigated at trial.  Furthermore, the Court finds that Plaintiff has not pointed to any evidence to the contrary.  Therefore, Defendant is entitled to summary judgment.

Plaintiff's complaint appears also to seek punitive damages against Defendant.  However, Plaintiff is not entitled to punitive damages as they are unavailable in breach-of-contract cases. See Walia v. Walia, 356 Ga. App. 387, 391 (2020) ("Punitive damages are not recoverable in actions for breach of contract, even if the breaching party did so in bad faith." (citing Mikart, Inc. v. Marquez, 211 Ga. App. 209, 212 (1993))).

### B. Plaintiff's Modified Motion for Discovery and Motion to Compel Discovery

Plaintiff's Modified Motion for Discovery [Doc. 49] and Motion to Compel Discovery [Doc. 78] are denied for failure to follow the Court's procedures for resolving discovery disputes set forth in the Court's standing order. [Doc. 8]. The Court's Standing Order instructs litigants to try to settle discovery disputes amongst themselves and, if they cannot, to contact the Court. [Id. at 13]. The Standing Order also states that litigants are to receive the Court's permission before filing a formal motion regarding a discovery dispute. [Id.] Plaintiff filed these motions concerning discovery without authorization, thus violating the Court's Standing Order. Therefore, Plaintiff's Modified Motion for Discovery [Doc. 49] and Motion to Compel Discovery [Doc. 78] were improperly filed and, as such, are denied.

### C. Plaintiff's Motions to Remand and alternatively to Bar Testimony of Ken Simmons

At the time of removal, the parties had complete diversity of citizenship and the amount in controversy exceeded the statutory amount of $75,000. [Doc. 1-1at ¶¶ 6-8, 16-17]. Accordingly, the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332. Having reviewed Plaintiff's Motions to Remand and alternatively to Bar Testimony of Ken Simmons [Docs. 52, 54], the Court finds no legitimate basis for remand. Further, Plaintiff has failed to articulate a valid reason to bar Simmons' testimony. Therefore, Plaintiff's Motions [Docs. 52, 54] are denied.

## V. <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Renewed Motion for Summary Judgment [Doc. 75] is **GRANTED** and that Plaintiff's Modified Motion for Discovery [Doc. 49], Motion to Compel Discovery [Doc. 78], and Motions to Remand and alternatively to Bar Testimony of Ken Simmons [Docs. 52, 54] are **DENIED**. As no further action is required of the Court in this matter, the Clerk is DIRECTED to close this case.

IT IS SO ORDERED this 3rd day of March, 2022.

*/s/ William M. Ray, II*
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE